**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CYNTHIA CASTANEDA | Case № 2:15-cv-08870-ODW-KS |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| WELLS FARGO HOME MORTGAGE, | **DEFENDANT'S MOTION TO** |
| CAL-WESTERN CORPORANTION | **DISMISS [9]** |
| WELLS FARGO BANK, N.A., and DOES | |
| 1 to 100, inclusive | |
| Defendants. | |

## I.    INTRODUCTION

After falling behind on her mortgage payments, Plaintiff Cynthia Castaneda attempted to modify her loan with Defendant Wells Fargo Bank, N.A. ("Wells Fargo")—the ultimate successor of World Savings Bank, FSB ("World Savings Bank").[1]  Castaneda alleges that Wells Fargo recorded a Notice of Trustee's Sale prematurely; that it failed to provide her with a written denial of her third loan

---

[1] National Bankruptcy Services, LLC, ("NBS") was named as a defendant but is a nominal party to this lawsuit.  NBS replaced Cal-Western Reconveyance Corporation as the trustee in the deed of trust encumbering the party at issue.  Plaintiff fails to state any facts that materially tie NBS to any alleged wrongdoing.  (ECF No. 1, p. 6.)

modification application; that it added unfair and duplicative fees for default-related services; and that it was negligent.  Castaneda also makes a claim for accounting.  Wells Fargo removed the case and now moves to dismiss.  For the reasons stated below, the Court **GRANTS** Wells Fargo's Motion to Dismiss.

## II.   FACTUAL BACKGROUND

In September 2004, Castaneda obtained a $223,300.00 loan from World Savings Bank which was secured with a Deed of Trust against the real property at 8231 Quoit Street, Downey, California.  (ECF No 10-1, Ex. A.)[2]  World Savings Bank was a federal savings bank, regulated at the time by the Office of Thrift Supervision.  (*Id*., Ex. G.)  After several mergers, Wells Fargo became the legal successor to World Savings Bank.  (ECF No. 9.)

Castaneda defaulted on her loan and on August 3, 2012, Wells Fargo recorded a Notice of Default and Election to Sell Under Deed of Trust.  (ECF No. 1-1, Ex. A (Compl.) ¶¶ 37-38.)  On or around September 19, 2013, Castaneda submitted a complete application for a loan modification, and in December 2013 she received two letters from Wells Fargo indicating that she did not qualify.  (*Id.* ¶¶ 39-41.)  Around July 2014, she submitted a second complete application for a loan modification, naming her husband as a contributor.  (*Id.* ¶ 42.)  On August 13, 2014, while Castaneda's second complete loan application was under review, Wells Fargo recorded a Notice of Trustee's Sale.  (*Id.* ¶ 43.)  In October 2014, Wells Fargo sent Castaneda a written denial of her second loan modification application and indicated that she did not qualify for any modification program with $4,100 of monthly income.  (*Id.* ¶ 44.)  Castaneda filed a timely appeal, which was denied.  (*Id.*)

Castaneda soon retained counsel to assist her with the loan modification process.  Her counsel requested information from Wells Fargo relating to Castaneda's loss mitigation options and transaction history.  (*Id.* ¶ 46.)  Wells Fargo responded

---

[2] The Court **GRANTS** Defendant's Request for Judicial Notice to the extent that the Court uses the documents adduced in this Order.  (ECF No. 10.)

with a loan history statement, which included various charges such as, "Misc. Application Pay," "After NOD Exp," "Late Charge Adjust," and others.  (*Id.* ¶ 47.)

Around April 13, 2015, Castaneda submitted a third loan modification application, stating a material change in circumstances.  (*Id.* ¶ 65.)  Specifically, she mentioned that her husband began working more overtime.  (*Id.*)  His monthly income was now $5,200, a $1,100 difference from the monthly income contained in the October 2014 denial letter.  (*Id.*)  Castaneda, through her counsel, contacted Wells Fargo on April 17, 2015 to inquire about her pending application.  (*Id.* ¶ 66.)  A Wells Fargo representative confirmed that a complete application was received, but it noted that it would not be opening a modification review.  (*Id.*)  To date, Wells Fargo has not provided Castaneda a written denial of the third complete loan modification application.  (*Id.*)

On October 18, 2015, Castaneda filed suit against Wells Fargo in Los Angeles County Superior Court alleging several violations of California's Homeowner Bill of Rights ("HOBR") and California's Unfair Competition Law ("UCL"), negligence, and a breach of the covenant of good faith and fair dealing.  (*Id.*)  Castaneda also makes a demand for accounting.  (*Id.*)  On November 13, 2015, Wells Fargo removed the action invoking diversity jurisdiction.  (ECF No. 1.)

On November 20, 2015, Wells Fargo moved to dismiss Castaneda's Complaint for failure to state a claim.  (ECF No. 9.)  The parties filed a timely opposition and reply.  (ECF Nos. 11, 14.)  Wells Fargo's Motion is now before the Court for decision.

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

Wells Fargo contends that Castaneda's causes of action fail to state a claim on their allegations. The Court will address each issue in turn.

## A.   HBOR Claims

Castaneda's first cause of action asserts claims under the California Homeowner Bill of Rights ("HBOR"). Specifically, she alleges that Wells Fargo violated California Civil Code section 2923.6(c) while handling her second loan modification application, section 2923.6(g) while handling her third loan modification application, and, as a consequence, also violated sections 2923.6(d) and 2923.6(f).

*a.  Cal. Civ. Code § 2923.6(c)*

1   Castaneda alleges that Wells Fargo violated California's law against dual
2   tracking.   The HBOR forbids a mortgage servicer from "dual tracking," or
3   "record[ing] a notice of default or notice of sale . . . while the [borrower's] complete
4   first lien loan modification is pending." Cal. Civ. Code § 2923.6(c).

5   Her allegation of dual tracking under section 2923.6(c) occurred when: (1)
6   Castaneda submitted her second loan modification application to Wells Fargo in July
7   2014, and (2) Wells Fargo recorded a Notice of Trustee's Sale on August 13, 2014
8   without providing Castaneda with a determination on her pending application.

9   Wells Fargo claims that Castaneda's allegation of dual tracking is moot because
10   it subsequently provided her with written notice denying both her application and
11   appeal in October and November 2014, respectively, thus remedying the violations.
12   The Court agrees.  If a mortgage servicer corrects and remedies a violation prior to the
13   recordation of a trustee's deed upon sale, it is not liable for violating section
14   2923.6(c).  Cal. Civ. Code § 2924.12(c).  *See Jerviss v. Select Portfolio Servicing,*
15   *Inc.*, No. 2:15-cv-01904-MCE-KJN, 2015 WL 7572130, at *5 (N.D. Cal. Nov. 25,
16   2015) (holding a dual tracking claim was moot after defendant sent written denial of
17   plaintiff's application before a sale was recorded); *Diamos v. Specialized Loan*
18   *Servicing LLC*, No. 13-CV-04997 NC, 2014 WL 3362259, at *5 (N.D. Cal. July 7,
19   2014) (holding that a cause of action for dual tracking is moot when defendant
20   rescinded notice of default); *Jent v. N. Trust Corp.*, No. 13–cv–01684 WBS, 2014 WL
21   172542, at *5 (E.D. Cal. Jan. 15, 2014) (holding that liability was precluded when
22   defendants had rescinded the notice of default and no trustee's deed upon sale had
23   been recorded); *see also Pearson v. Green Tree Servicing, LLC*, No. 14-CV-04524-
24   JSC, 2015 WL 632457, at *2 (N.D. Cal. Feb. 13, 2015) (explaining that if the *servicer*
25   takes action to correct the HBOR violation before proceeding to foreclosure, no
26   liability results) (emphasis added).

27   Here, Castaneda does not allege that a trustee's deed upon sale has been
28   recorded.  Furthermore, the Complaint shows that Wells Fargo cured the alleged

5

violation of section 2923.6(c) by delivering a written denial to Castaneda's second loan application in October 2014. (Compl. ¶ 44.) Accepting Castaneda's allegations as true, Wells Fargo cured any purported violation of section 2923.6(c) by complying with 2924.12(c). As such, the Court **GRANTS** Defendant's Motion as to section 2923.6(c).

### b. Cal. Civ. Code § 2923.6(g)

Castaneda next alleges that Wells Fargo violated section 2923.6(g), which requires a mortgage servicer to evaluate applications from borrowers who have already been evaluated for a first lien loan modification if "there has been a material change in the circumstances since the date of the borrower's previous application . . . ." Cal. Civ. Code § 2923.6(g). Castaneda claims that her husband's monthly income at the time of her third loan modification application in April 2015 was $5,200—a $1,100 increase from her second application in July 2014—and that Wells Fargo failed to evaluate her application despite this material change. (Compl. ¶¶ 65, 66.)

Wells Fargo argues that Plaintiff's second application included her husband's income; therefore it had already considered the change in circumstance Castaneda argues is relevant here. (ECF No. 9, p. 5.) Additionally, Wells Fargo argues that Castaneda has not provided the requisite documentation for her third application showing a material change in circumstance.[3] (*Id.* at p. 14.)

Indeed, Castaneda must do more than plausibly plead a material change in circumstance to state a claim under section 2923.6(g). Castaneda must allege that she provided documentation of her updated circumstances to Wells Fargo. *Salazar v. U.S. Bank Nat. Ass'n*, No. ED CV 14-514-GHK (DTBx), 2015 WL 1542908, at *4 (C.D. Cal. Apr. 6, 2015). Construing the facts in Plaintiff's favor as is required at this stage, the Court finds that Castaneda has not met her burden. In her Complaint, Castaneda alleges that she faxed a loan modification application noting that her husband was

---

[3] Plaintiff provides documentation for a fourth loan modification application filed in October 2015, but did not provide documentation for her third loan modification application. (ECF No. 11, Ex. A, pp. 14-64.)

1    working more overtime, resulting in the $1,100 increase in income from the second
2    loan modification application.  (Compl. ¶ 65.)  "[A]lthough the precise nature of the
3    documentation required under this code is not clear, the plaintiff must do more than
4    submit a new loan modification with different financial information."  *Saber v.*
5    *JPMorgan Chase Bank, N.A.*, 2014 WL 255700, at *2 (C.D. Cal. Jan. 23, 2014); *see*
6    *also Salazar*, 2015 WL 1542908, at *4.  To find otherwise would be to defeat the
7    intent of subsection (g), which is to "relieve mortgage servicers from evaluating
8    multiple loan applications submitted for the purpose of delay." *Winterbower v. Wells*
9    *Fargo Bank, N.A.*, 2013 WL 1232997, at *3 (C.D. Cal. Mar. 27, 2013).

10        As such, Castaneda must allege what, if any, proper documentation she
11   submitted to Wells Fargo to support her material change in circumstance for the third
12   loan modification application.  *See Winterbower*, 2013 WL 1232997 at *3
13   (documenting and submitting a material change in circumstance "means more than
14   simply stating one's [income] has increased and then providing two numbers").  The
15   Court **GRANTS** Defendant's motion to dismiss Plaintiff's 2923.6(g) claim with leave
16   to amend.

17                    *c.  Cal. Civ. Code §§ 2923.6(d), 2923.6(f)*

18        Castaneda alleges other HBOR violations stemming from Wells Fargo's
19   decision not to review her third loan modification application.  She alleges a violation
20   of section 2923.6(f), which requires a servicer to provide written notice to the
21   borrower that includes the reason for denial, and a violation of 2923.6(d), which
22   grants the borrower thirty days after the written denial to file an appeal.  Cal. Civ.
23   Code §§ 2923.6(d), 2923.6(f).

24        These claims are premised on the assumption that Wells Fargo had any
25   obligation to review Castaneda's third application under section 2923.6(g).  Because
26   Castaneda has not adequately stated a claim for relief under 2923.6(g), the Court
27   **GRANTS** Defendant's Motion to Dismiss these derivative claims with leave to
28   amend.

**B.** **Negligence**

Castaneda's next cause of action is for negligence. Wells Fargo contends that Castaneda failed to state a claim for negligence because lenders do not generally owe their borrowers a duty of care.

Under California law, the "existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991). Generally, a financial institution does not owe its borrower a duty of care "when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 1096. A lender exceeds its "conventional role" as a money lender when it "actively participates" in the financed enterprise "beyond the domain of the usual money lender." *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

Castaneda does not allege in her Complaint any facts suggesting that Wells Fargo exceeded the normal role of a lender during the default/foreclosure process; she simply reiterates that it failed to comply with the procedures set forth in section 2923.6, as stated above. (Compl. ¶¶ 75–77.)

While Castaneda's allegations under section 2923.6 may make out statutory violations if sufficiently pled, they still do not establish that Wells Fargo "actively participate[d]" in Castaneda's loan "beyond the domain of the usual money lender." *See Wagner*, 101 Cal. App. 3d at 35. Rather, these actions—or inactions such as they are—fall squarely within the class of conduct a lender might take during the default process. The Court thus **GRANTS** Defendant's Motion on this claim.

**C.** **Unfair Competition Law**

Castaneda next brings a claim against Wells Fargo for violating the California Unfair Competition Law ("UCL"). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Wells Fargo contends that Castaneda

both lacks standing to bring a UCL claim and fails to adequately plead allegations of unlawful, fraudulent, or unfair conduct.  (ECF No. 9, pp. 19–20.)

      1.     *UCL standing*

To have standing to sue under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition."  *Id*. § 17204.   The California Supreme Court held that to satisfy this requirement, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

Wells Fargo argues that Castaneda has not alleged any injury or a loss of money or property that was caused by its conduct because the foreclosure sale has not occurred yet.  (ECF No. 9, p. 19.)  Instead, it contends that any of Castaneda's injuries would be due to her *own* failure to pay her mortgage as she promised.  *Id.*

But Castaneda does allege that she suffered economic injury as a result of Wells Fargo's conduct, namely the loss of home equity.  (Compl. ¶ 102.)  Castaneda asserts that Wells Fargo's decision to charge marked up and excess fees caused her to lose title to, and interest in, her home.  (*Id.* ¶ 103.)  These economic detriments easily satisfy the California Supreme Court's interpretation of section 17204.  *See Kwikset*, 51 Cal. 4th at 323 (interpreting the phrase "lost money or property").

The Court therefore finds that the Castaneda has standing to sue under the UCL.

      2.     *"Unlawful" conduct*

UCL's "unlawful" prong "borrows" violations of other laws such that a "defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law."  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

Wells Fargo attacks Castaneda's allegations that it violated various provisions of section 2923.6 or was otherwise unlawful in its dealings with Plaintiff.

### a. 18 U.S.C. §§ 1341, 1343, 1962

Castaneda alleges, rather vaguely, that Wells Fargo's decision to omit material facts with respect to her third loan modification application constitutes "unlawful" conduct because it violates 18 U.S.C. section 1341 (mail fraud), section 1343 (wire fraud), and section 1962 (criminal racketeering).  Even after sifting through the Complaint with a fine-toothed comb, the Court cannot find enough facts to support any cognizable violation under the aforementioned sections of Title 18.

### b. Cal. Civ. Code § 2923.6

Further, because the Court has already found that Castaneda did not adequately plead a violation of the HBOR, any alleged violations under section 2923.6 cannot serve as a predicate for a UCL claim.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 558 (9th Cir. 2010).

### 3. "Fraudulent" conduct

A "fraudulent" business act or practice is one which is likely to deceive members of the public.  *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223 (2010).  UCL claims premised on fraudulent conduct trigger the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Here, the Complaint fails to meet the heightened pleading standard required for fraud claims because Castaneda only vaguely alleges how members of the public are likely to be deceived by Wells Fargo's actions.  She alleges that Wells Fargo instituted improper or premature foreclosure proceedings to generate fees for default-related services, all while concealing the true character, quality and nature of the fees—or simply put, the fees themselves were marked-up and unwarranted.  (*E.g.*, Compl. ¶¶ 94, 99.)  She jumps to the conclusion that these practices are likely to deceive the

public.   However, these allegations are insufficient to meet the heightened pleading standard required to plead a fraudulent business act.

   4.   *"Unfair" conduct*

In interpreting the UCL's "unfair" term, the California Supreme Court held that "the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

Castaneda has not alleged how Defendant's actions rose anywhere near the mandatory level of anticompetitive activity.

Accordingly, the Court **GRANTS** Defendant's Motion as to the UCL claim with leave to amend the unlawful prong only.

**D.   Implied Covenant of Good Faith and Fair Dealing**

Castaneda alleges that Wells Fargo breached the implied covenant of good faith and fair dealing by denying her request for a loan modification and by imposing unnecessary and marked up fees in conjunction with its default-related services.   This allegation suggests that Castaneda's loan agreement contained an implicit promise that Wells Fargo would assist her as she attempts to obtain a loan modification or pursue other loss mitigation alternatives.   Castaneda tried with the section 2923.6 claim to persuade the Court that Wells Fargo is legally obligated to accept her request for a loan modification, and with the UCL claim to argue certain fees were imposed incorrectly and inconsistently onto her.   The implied covenant approach is different in form, but not in substance.

The covenant of good faith and fair dealing is implied to protect the express covenants of a contract, not a general public policy interest indirectly tied to the contract's purpose.   *Racine & Laramie, Ltd. v. Cal. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031 (1992).   The covenant is implied as a supplement to the

express contractual covenants "to prevent a contracting party from engaging in conduct" that does not technically breach the express covenants, but otherwise "frustrates the other party's rights to the benefits of the contract." *Id.* at 1028.

The obvious purpose of the mortgage loan is to memorialize the terms on which Castaneda will pay back the money borrowed. There is no reason to believe that somewhere in the agreement is an implicit promise to permit Plaintiff to change the terms of repayment due to her default. Such an implied promise would directly undermine, not protect, the contract's express terms. Regarding the fees for Well Fargo's default-related services, Castaneda has failed to identify how they were improperly assessed, or how the charges themselves undermine, rather than protect, the terms of the loan agreement. Therefore, the Court **GRANTS** Wells Fargo's Motion as to this cause of action.

### E.   Accounting

Lastly, Castaneda makes a demand for accounting based on the fees alleged to be improper and unnecessary. For her to be entitled to accounting, Castaneda must demonstrate a relationship between the plaintiff and defendant exists that requires an accounting, and that some balance is due to the plaintiff that can only be ascertained by an accounting. *See Teselle v. McLaughlin*, 173 Cal. App. 4th 156, 179 (2009).

Other than merely concluding that Wells Fargo owes her a duty, Castaneda has not demonstrated why that is the case. As stated once before, a mortgage lender or trustee under a deed of trust generally does not owe a fiduciary duty to the borrower. *See Nymark*, 231 Cal. App. 3d 1089, 1093 n. 1 (1991). Castaneda claims, however, that a relationship for accounting exists because Wells Fargo collected money that it actually did not have forthcoming. This notwithstanding, Castaneda has failed to plead sufficient facts regarding these fees to survive a motion to dismiss. *See Williams v. Wells Fargo Bank, NA*, No. EDCV 13-02075 JVS (DTBx), 2014 WL 1568857, *9 (C.D. Cal. Jan. 27, 2014) ("The [c]omplaint is devoid of any factual details regarding when these charges were assessed, the venders involved, or why

[Plaintiff] . . . concluded that these charges were excessive.").  Thus, the Court **GRANTS** Wells Fargo's Motion on the demand for accounting.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss.  (ECF No. 9.)  Castaneda may amend her Complaint within 14 days with respect to the HBOR claims and the UCL's unlawful prong only.

**IT IS SO ORDERED.**

February 26, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**